## J. B. KLEIN IRON & F. CO. v. A. B. MAYS & CO. et al.

No. 9454—Opinion Filed Oct. 14, 1919.

(Syllabus by the Court.)

**1. Mechanics' Liens—Sub-Contractors—Payments to Contractor.**

In an action against the owner of a building to enforce a sub-contractor's lien, evidence of payments made by the owner to the contractor, who in turn paid the money thus received to sub-contractors, laborers and artisans during the sixty days within which they otherwise would have been entitled to file liens, is admissible; and where the cost exceeds the contract price, the owner is entitled to credit for such payments to the extent of the pro rata amounts which the other sub-contractors, etc., would have been entitled to if their liens had been filed.

**2. Same—Set-off.**

In a suit by a sub-contractor to enforce a lien against the owner of the building, the owner may offset any actual damages which he has sustained, caused by the contractor's failure to complete the building in time, provided the damages are such as may be said to have been in the contemplation of the parties when the contract was made.

Error from District Court, Bryan County; Jesse M. Hatchett, Judge.

Action by J. B. Klein Iron & Foundry Company against A. B. Mays & Co. and others to foreclose a sub-contractor's lien. From the judgment the plaintiff brings error. Affirmed.

Utterback & MacDonald, for plaintiff in error.

Hayes & McIntosh, Victor C. Phillips, and W. H. Ritchey, for defendants in error.

KANE, J. This was an action to foreclose a sub-contractor's lien commenced by the plaintiff in error against A. B. Mays, the contractor, W. T. Bennett, the owner, and various other lien claimants. The petition was in the usual form and stated facts sufficient to constitute a cause of action. The answer of Bennett, the owner, consisted of a general denial and affirmative defense to the effect that by reason of the failure of A. B. Mays & Company to carry out the terms of his building contract, said Bennett was compelled to take charge of the construction of said building, which he did, and to complete said building as per the terms of said contract; that he expended in finishing said building the sum of $4,160, all of which was for labor and material within the purview of said original contract; that while the amount the owner agreed to pay the original contractor was the sum of $6,600, the total paid to the contractor in completing said building ag-

gregated $9,700; that by reason of the contractor failing to finish the building within the time prescribed by the contract, said owner was damaged in the sum of $970, the sum being the amount of rent lost upon the ground floor, and the sum of $300, the sum being the amount of rent lost by reason of being unable to rent the second floor; that for overseeing the completion of said building said owner's services were reasonably worth $5.00 per day, which sum he prayed should be added to the amount expended by him and made a set-off against the claim of the plaintiff and the other lien claimants.

The court found the facts to be substantially as alleged in the answer of the owner, and further found:

"That prior to the time he (the owner) took over the building he had paid the contractor $4,498.27. The evidence shows that a good portion of that money was paid out for material and labor, but does not show the exact amount. The evidence does show that payments were made during the course of the building on estimates furnished by the architect, and that at the time Bennett took over the building there was unpaid a total sum of $1,241.85. I therefore find that the amount of money of the payments made by Bennett to the contractor which was applied to the payments of labor and material bills, was the total sum less the amount of the claims, which would make the total amount applied to the material and labor bills $3,256."

From these facts the court made the following conclusions of law:

"I conclude from the foregoing facts that the defendant Bennett should be entitled to full credit for the amount he paid out on the building, to wit, $4,185, and the amount of damages, to wit, $600, making a total of $4,785, which leaves a balance of $1,816. That he is entitled to credit pro rata for the amount of money paid to the contractor which was applied to material and labor bills, to wit, $3,256. Therefore, the total amount of the claims of the various lien claimants, to wit, $1,241.85 and $3,256, making a total of $4,498, should be paid off pro rata out of the $1,816 balance. $1,816 is 40 per cent. of the total of $4,498."

"Therefore the various lien claimants are entitled to recover 40 per cent. of the amount of their claims and they are granted judgment for such sum and a foreclosure of their liens against the property involved herein to pay the same."

The appealing lien claimants, J. B. Klein Iron & Foundry Company, Rockwell Bros. & Company, and M. Brame, take no exceptions to these findings of fact, but they claim that the trial court erred in holding as a matter of law that the owner was entitled to the credits claimed in his answer. They say the rights of the plaintiff in error and the de-

fendants in error Rockwell Bros. & Company and M. Brame are founded upon section 386a of the Revised Laws of Oklahoma, 1910, and that the ruling of the trial court contravenes said section of the statute, which reads as follows:

"Any person who shall furnish any such material or perform such labor as a sub-contractor, or as an artisan or day laborer in the employ of the contractor, may obtain a lien upon such land, or improvements, or both, from the same time, in the same manner, and to the same extent as the original contractor, for the amount due him for such material and labor; and any artisan or day laborer in the employ of, and any person furnishing material to such sub-contractor, may obtain a lien upon such land, or improvements, or both, for the same time, in the same manner, and to the same extent as the original contractor, for the amount due him for such material and labor; by filing with the clerk of the district court of the county in which the land is situated, within sixty days after the date upon which material was last furnished or labor last performed under such sub-contract, a statement, verified by affidavit, setting forth the amount due from the contractor to the claimant, and the items thereof, as nearly as practicable, the name of the owner, the name of the contractor, the name of the claimant, and a description of the property upon which a lien is claimed, and by serving a notice in writing of the filing of such lien upon the owner of the land or improvements, or both; provided, that if with due diligence the owner cannot be found in the county where the land is situated, the claimant, after filing an affidavit setting forth such facts, may serve a copy of such statement upon the occupant of the land, or the occupant of the improvements, as the case may be; or, if the same be unoccupied, he may post such copy in a conspicuous place upon the land or any building thereon. Immediately upon the filing of such statement, the clerk of the district court shall enter a record of the same in the docket provided for in the preceding section, and in the manner therein specified: Provided, further, that the owner of any land affected by such lien shall not thereby become liable to any claimant for any greater amount than he contracted to pay the original contractor. The risk of all payments made to the original contractor shall be upon such owner until the expiration of the sixty days herein specified, and no owner shall be liable to an action by such contractor until the expiration of such sixty days; and such owner may pay such subcontractor the amount due from such contractor for such labor and material, and the amount so paid shall be held and deemed a payment of said amount to the original contractor."

The Supreme Court of Kansas, from which state the foregoing statute was taken, seems

to have passed upon all the questions involved in this case in the case of Fossett v. Rock Island Lumber & Mfg. Co., 92 Pac. 833, 14 L. R. A. 918.

The applicable paragraphs of the head notes read as follows:

"2. In a suit against the owner of a building to enforce a sub-contractor's lien, evidence of payments made by the owner to other sub-contractors during the sixty days within which they were entitled to, but did not, file liens, is admissible; and, where the cost exceeds the contract price, the owner is entitled to credit for such payments to the extent of the pro rata amounts which the other sub-contractors would have been entitled to if their liens had been filed.

"2. In a suit by a sub-contractor to enforce a lien against the owner of the building, the owner may offset any actual damages which he has sustained, caused by the contractor's failure to complete the building in time, provided the damages are such as may be said to have been in the contemplation of the parties when the contract was made."

The only difference between the principal case and the case at bar is that in the case at bar the owner made the payments directly to the original contractor, who applied the money thus received in payment of the claims of certain sub-contractors, laborers, and artisans who otherwise would have been entitled to liens under the statute, while in the Kansas case the owner made the payments direct to the sub-contractors, laborers, etc., during the sixty days in which they were entitled to file liens. It is not contended that this difference is sufficient to distinguish the two cases, nor do we believe that it is. Counsel for plaintiff in error rely entirely upon the case of W. E. Caldwell v. John Williams-Taylor Co., 50 Okla. 798, to support their side of the case. We do not think that case is in point. The only question involved in that case was whether or not a sub-contractor, furnishing material actually used in the construction of a building, has a lien, when he gave the statutory notice of filing his lien within sixty days of the time he furnished the material, in a case where the contractor abandoned his contract, after he had been paid the full contract price, prior to the expiration of sixty days. The court properly answered this question in the affirmative.

But there was no claim and no attempt was made to show that any portion of the money paid the original contractor was ever used by him for the purpose of paying the sub-contractors or other persons entitled to liens or that the owner was entitled to any damages sustained by the contractor's failure to complete the building. These are the precise questions presented for review in the case at bar, and the only case directly in point

which has been called to our attention is the Kansas case. While the reasoning and conclusion reached by the learned justice who prepared the opinion in the Kansas case is not wholly convincing to the writer of this opinion, the court, in view of the similarity of the two statutes and of the questions involved and the dearth of authority thereon from other jurisdictions, is constrained to follow the precedent established by the principal case.

For the reasons stated the judgment of the court below is affirmed.

All the Justices concur, except McNEILL, J., not participating.