### GUEST v. SHAMBURGER.

No. 16850—Opinion Filed Oct. 19, 1926.

Rehearing Denied Dec. 14. 1926.

1. **Mechanics' Liens—Assignment—Enforcement—Right of Owner to Set Off Damages Against Contractor.**

Where S. furnishes E. with building material used in the construction of a building by E. under contract with G., the owner, and S. thereafter files his materialman's lien against the lands of G., and E., the contractor, after the completion of the building, files his lien against the lands of G., and E. thereafter assigns his lien claim to S., and thereafter S. files his action seeking to foreclose the liens, and sets up the assigned claim of E. in a separate cause of action, damages, if any suffered by G., because of faulty workmanship by E., may be properly set up against such assigned lien claim of E., but not against the original claim of S. for material furnished by S.

2. **Trial—Refusal to Instruct on Issues not Supported by Evidence.**

Where the issue is raised by the pleadings, but not supported by competent evidence, it is not error for the court to refuse to submit such issue to the jury.

3. **Mechanics' Liens—Law Construed to Carry Out Legislative Intent.**

The provisions of the mechanic's lien law should be interpreted so as to carry out the object had in view by the Legislature in enacting it, namely, the security of the classes of persons named in the act, upon its provisions being, in good faith, substantially complied with.

4. **Same—Best Evidence as to Furnishing Material.**

In an action to enforce a materialman's lien for materials furnished for the construction or repair of buildings on the lands of the owner, the best evidence of which the

cause is susceptible is that of one who actually was present and saw such materials delivered on the premises of the owner for use in such building.

(Syllabus by Ruth, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Stephens County; M. W. Pugh, Judge.

Action by C. D. Shamburger against J. L. C. Guest to foreclose a mechanic's and materialman's lien on certain real property. Judgment for plaintiff on causes of action numbered 1 and 3, and defendant appeals. Affirmed.

Wilkinson & Wilkinson and Melton & Melton, for plaintiff in error.

Sandlin & Winans, for defendant in error.

Opinion by RUTH, C. C. D. Shamburger, as plaintiff, brought his action against J. L. C. Guest, as defendant, praying foreclosure of a materialman's and mechanic's lien against certain real property owned by defendant.

The petition of plaintiff alleges as a first cause of action, that defendant entered into a contract with one J. F. Eagan, whereby Eagan was to erect a dwelling on the land of defendant, for the sum of $1,964, and that plaintiff furnished certain building material for such building of the value of $1,229.92, and prays judgment for the last-stated sum.

It appears J. F. Eagan had also filed his lien against the land in the sum of $1,534.45, and being indebted to plaintiff, Eagan assigned his lien claim to plaintiff, and this constitutes the second cause of action, and on this cause of action, judgment was rendered for defendant, and this judgment was not appealed.

For a third cause of action plaintiff alleges he made a contract direct with the defendant, whereby plaintiff furnished other material of the value of $736.82 to defendant for repairing or altering buildings on the same lots or real property.

The contract between defendant and Eagan contains the following clause:

"Security against mechanics' or other liens upon said building is hereby guaranteed by said J. F. Eagan, contractor, and each party hereto binds himself, his heirs, executors, and assigns to the other firmly by these presents."

Defendant answered by general denial, and further alleged that Eagan agreed to complete the building in May, 1922: that Eagan failed to furnish first-class material or workmanship, whereby defendant was damaged in the sum of $555. Defendant further alleges he notified the agent of plaintiff that he was obtaining a loan from G. W. Yeager to erect the building, and that all subcontractors would have to look to Eagan and the loan for their money, and that plaintiff neglected to collect his money from Yeager, and Eagan obtained the sum of $1,694.85 from Yeager and "skipped the country," and therefore defendant is not indebted to plaintiff. Defendant admits certain extra work ordered by him, for which he was indebted to Eagan, and pleads his offset for damages, itemizing same, and further alleges that by reason of the "security against liens" clause in the contract, and the assignment of lien claims by Eagan to plaintiff, the plaintiff became liable for all damages and liens, and further alleges that some of the building material alleged to have been furnished to defendant's building was taken by Eagan to other buildings being constructed by Eagan.

The cause was tried to a jury, and a verdict rendered for plaintiff on the first and third causes of action, and defendant appeals. The verdict on the second cause of action was for defendant and no cross-appeal was filed by plaintiff.

Defendant assigns 15 specifications of error, and argues them under three propositions or "points," and insists that where there is any evidence in support of an allegation in an answer, it is error for the court to refuse to submit such evidence to the jury. This is true if the testimony is competent testimony, but in the instant case the defendant insists the testimony relative to inferior materials and faulty workmanship was applicable to the first and third causes of action, but the court instructed the jury that the testimony was competent as to the second cause of action, and we find no error in so restricting the testimony to such second cause.

"Point 2, presented by defendant and argued in connection with point 1, is to the effect that:

"The assignee of a chose in action takes such chose with all the burdens imposed thereon by the contract between the assignor and the other party to the contract."

The defendant argues from the wrong premise. He proceeds upon the theory that Eagan assigned his "contract" to build, whereas Eagan assigned only his lien claim after the contract was completed, and to secure plaintiff in the sum of $250, and the court instructed the jury as to this second cause of action, that if they found from the

evidence that Eagan caused the defendant, Guest, any damages by reason of poor workmanship, or failure to comply with the contract, the damages so found might be offset against any amount found to be due Eagan on the assigned claim constituting the second cause of action, but not as against the first and third causes of action. We think this instruction correctly states the law.

The third cause of action was founded upon a contract for material ordered by Guest for repairs to garage, for construction of cement sidewalks, driveways, etc., which was contracted for by Guest after the contract made with Eagan, and was a separate and distinct transaction between plaintiff and defendant in which Eagan played no part, except to use the material as it was supplied by defendant, Guest.

The first cause of action was founded upon a claim for material furnished by plaintiff under Eagan's contract with defendant, and if there was faulty workmanship on the part of Eagan, if the material furnished was such as Eagan ordered, but did not conform to the specifications, this could not be charged against the plaintiff.

The defendant, under the terms of the contract, reserved the right to reject any faulty material or workmanship, and although visiting the building "every day," he never objected to either, but moved into the house upon completion. The lien of plaintiff being timely and properly filed, plaintiff was entitled to recover on his first cause of action. To adopt any other rule would open the door to fraud and collusion, and permit an owner of property to contract for the erection of a building with a time limit of construction clause, and a specified amount as liquidated damages (sometimes placed at the rental value of the property) for each day beyond the time limit so specified that it took the contractor to complete the work, and if this per diem sum as liquidated damages, together with claims for faulty workmanship and inferior material, could be set off against lien claims of workmen and materialmen, our mechanic's and materialman's lien law would be a mere nullity.

Defendant cites 5 Corpus Juris, 962, par. 150; 2 R. C. L. 265, par. 34; Jack v. National Bank of Wichita, 17 Okla. 430, 89 Pac. 219; and Citizens Bank of Wakita v. Garnett et al., 21 Okla. 200, 95 Pac. 755, in support of his contention that "plaintiff cannot sue on this contract and claim the benefits thereof, and at the same time repudiate the burdens provided for in said contract." The cited cases are not analogous, and, as we

have pointed out, plaintiff was not the assignee of the contract, but of the lien claim, and if defendant owed nothing to Eagan under plaintiff's second cause of action, nothing could be recovered, and damages to defendant might be set off against this cause of action alone.

Defendant's objection was leveled against instructions numbered 2 and 7 as given by the court, and he also includes under this head or "point," his objection to the refusal of the court to give instructions numbered 3 and 4 and 5 requested by defendant. Instructions numbered 4 and 5 request the court to charge the jury that plaintiff would be liable to defendant in damages on any one of the three causes of action for inferior materials used and faulty workmanship done by Eagan, but we have passed upon that question.

Defendant's requested instruction No. 3 was to the effect that defendant, Guest, would only be liable to plaintiff for such material as was delivered to him by the plaintiff, and would not be liable for any material which may have been delivered to Eagan, if any, and which was not used in the repair of the old building. The requested instruction was properly refused for several reasons:

First. There was no competent evidence offered to prove any material delivered for the repair job was removed by Eagan as suggested by defendant, where there is no competent evidence tending to prove a matter in issue it is not error in the court to refuse an instruction upon such issue. Smith v. Travel, 20 Okla. 512, 94 Pac. 529; Oklahoma Railway Co. v. Christenson, 47 Okla. 132, 148 Pac. 94; Lockwood Bros. v. Frisco Lumber Co., 22 Okla. 21, 97 Pac. 562; White v. Oliver, 32 Okla. 479, 122 Pac. 156; Muskogee Elec. Traction Co. v. Staggs, 34 Okla. 161, 125 Pac. 481; Firebaugh v. DuBois, 70 Okla. 269, 173 Pac. 1126.

Defendant cites J. B. Klein Iron & Foundry Co. v. A. B. Mays & Co. et al., 76 Okla. 177, 184 Pac. 577, in support of the rule that:

"In a suit by a subcontractor to enforce a lien against the owner of the building, the owner may offset any actual damages which he has sustained, caused by the contractor's failure to complete the building in time provided, provided the damages are such as may be said to have been in contemplation of the parties when the contract was made."

The cited case is not in point, as in that case the contractor agreed to complete the building within a certain time for the sum of $6,600, and before completion the con-

tractor abandoned the work, and the amount paid by the owner to the contractor aggregated $9,700, and the owner was damaged in the sum of $1,270 by loss of rents, etc., and the owner was compelled to complete the contract. In the instant case there is no allegation or proof of the abandonment of the contract, but the building was completed and plaintiff moved into the same, and the only claim for damages arises out of the alleged faulty workmanship and inferior materials used, and this was under the control of defendant according to the terms of the contract, and defendant testifies he visited the house every day during its construction, and paid out, or caused or permitted, without protest, to be paid out, to Eagan the sum of $1,694.85 prior to the expiration of the time within which liens might be filed. In Klein v. Mays, supra, this court cites Caldwell v. Williams-Taylor Co., 50 Okla. 798, 150 Pac. 698, and commenting thereon, says:

"The only question involved in that case was whether or not a subcontractor furnishing material actually used in the construction of a building has a lien, when he gave the statutory notice of filing his lien within 60 days of the time he furnished the material, in a case where the contractor abandoned his contract, after he had been paid the full contract price prior to the expiration of 60 days. The court properly answered this question in the affirmative."

In Eberle v. Drennen, 40 Okla. 59, 136 Pac. 162, 51 L. R. A. (N. S.) 68, it is said:

"The provisions of the mechanic's lien law should be interpreted so as to carry out the object had in view by the Legislature in enacting it, namely, the security of the classes of persons named in the act, upon its provisions being in good faith substantially complied with on their part."

Section 7463, C. O. S. 1921, under the title, "Liens of Mechanics and Materialmen," provides in part:

"The risk of all payments made to the original contractor shall be upon such owner until the expiration of 60 days herein specified, and no owner shall be liable to an action by such contractor until the expiration of said 60 days."

This brings us to a consideration of certain evidence offered by defendant and rejected by the court, and as the ruling of the court thereon is assigned as error, it may be disposed of at this time. Defendant attempted to testify that J. W. Thresher, foreman for Eagan, told defendant that Eagan had not paid him, and that Eagan had had lumber "checked in" to the defendant on the repair work, and then Eagan hauled it away. This was clearly inadmissible: First, because

it was purely hearsay. Second, there was no showing or offer of the value of the lumber hauled away by Eagan, if any was so hauled. Third, the repair work, sidewalks, driveways, etc.,—was a separate contract between plaintiff and defendant, and the only burden upon the plaintiff was to prove he delivered the material to defendant upon a proper order, and when a vendor delivers property to the vendee, the vendor is not required to station a watchman on the job to see that the material actually is used in the building; and even though it were admitted Eagan removed material after actual delivery to defendant, the delivery being complete, the material became the property of defendant, and its asportation by Eagan, or any other person under the offered evidence in the instant case, is fully covered by the statutes of this state, upon which this court does not pass in civil actions: therefore, whatever Thresher may have told defendant and defendant's wife was not competent evidence to establish any set-off in favor of the defendant against plaintiff's third cause of action.

Defendant's next assignment of error is directed against the action of the court in overruling the demurrer to plaintiff's evidence in all three causes of action, and again insists that plaintiff, as "assignee of the contract of Eagan, placed himself in Eagan's shoes," and is liable for damages occasioned by Eagan's failure to construct the building according to contract, but as we have passed upon that question, it will be unnecessary to discuss it further.

It is next alleged the court erred in admitting incompetent evidence over the objection of the defendant. This action was filed August 10, 1922, and although defendant alleges in his answer that Eagan collected his money and "skipped the state," it appears that Eagan's depositions were taken in the city of Duncan, where this cause of action arose, on March 13, 1923, and May 18, 1923, and it is to Eagan's testimony defendant objects, and the questions and answers are as follows: Counsel for plaintiff exhibiting and referring to the itemized statement attached to plaintiff's petition, propounded the following:

"Q. Is that so far as you are able to tell, a correct statement of the material furnished by Shamburger, that went into that house?

"A. To the best of my knowledge, it is

"Q. I will ask you to examine the exhibit of plaintiff to the petition showing the material that was furnished to them direct, to Mr. Guest according to the petition, and state if that is approximately a correct statement

of the material used for extra work on the Guest job?

"A. Well I can't tell anything about this without going into detail.

"Q. Can you look over that list and tell whether that was the material required for the extra work you did and which was used in doing this extra work?

"A. As near as I can remember the bills seems to be all right, as far as I can say at present.

"Q. Was the material shown in the itemized statement attached to plaintiff's petition necessary and suitable to the improvement that you did there?

"A. Material used best could buy in Duncan. Dimension stuff B & B grade, all the way through, remaining part of material is what is used in every other structure.

"Q. The items mentioned in this itemized statement were necessary to do the work, the extra work spoken of?

"A. Yes, sir.

"Q. Did you actually use the material listed in plaintiff's exhibit 'A' to their petition, which you first looked over, in the construction of the house?

"A. As near as I can tell."

These questions and answers were objected to on the ground that G. M. Fore had testified that he was the bookkeeper for plaintiff, and that plaintiff's books were in his office "here in Duncan."

Defendant insists: "The best evidence of which the case in its nature is susceptible must be produced," citing Kasenberg v. Hartshorn, 30 Okla. 417, 120 Pac. 956, and Drumm-Flato Com. Co. v. Edmisson, 17 Okla. 344, 87 Pac. 311. With this we are in perfect accord, but when defendant insists the items as charged on the plaintiff's books were the best evidence of what was actually delivered and used on the defendant's premises, we cannot follow him to this length. Had plaintiff been attempting to prove what was charged to defendant, the original books of entry would have been the best evidence, but the cause of action was founded upon the value of material actually delivered to defendant and used in the construction and repair of the premises, and the testimony of any person who saw the material delivered, and signed a receipt for the same and used the material or saw it being used, or saw it after it became a part of the structure, would be the best evidence, and evidence of its having been charged would not even raise a presumption that it had been delivered.

True it is, that some one or more of the answers might not have been directly responsive to the questions, but no motion was interposed to strike the same, and upon the whole, we cannot say there was any prejudicial error in the admission of the testimony, particularly in view of the fact that the teamsters working for plaintiff testified to hauling the material and delivering it to the defendant's building, and Eagan had testified and identified some 25 or 26 delivery slips or receipts signed by him, and testified they were signed when the material was delivered to the Guest jobs, and had been used in the construction and repair of defendant's premises, and other receipts were proven to have been signed by the foreman, Thresher, and other men employed on the work.

In DeBolt v. Farmers Exchange Bank et al., 51 Okla. 12, 151 Pac. 686, this court held:

"When it is shown that the material was sold to be used in the building; that it was delivered to the builder on the premises, that the building was erected, and there is some testimony that some of the material was used therein, then a prima facie case is made out."

We are of the opinion that the cause was submitted to the jury under instructions correctly stating the law applicable to the issues and the evidence, and that the testimony reasonably tended to sustain the verdict, and where there is any evidence reasonably tending to sustain the verdict of the jury, the judgment rendered thereon will not be reversed on appeal. Meyers v. Caruthers, 83 Okla. 131, 200 Pac. 212; Neary v. Etenburn, 87 Okla. 279, 209 Pac. 649; Lawton Refining Co. v. Hollister, 86 Okla. 13, 205 Pac. 506.

The judgment of the trial court is affirmed.

By the Court: It is so ordered.

Note.—See under (1) 5 C. J. p. 963, §150; 40 C. J. pp. 383, 384 (Anno), §522. (2) 38 Cyc. pp. 1617, 1619. (3) 40 C. J. p. 52, §11; p. 161, §179. (4) 40 C. J. p. 463, §661 (Anno).