**CONSOLIDATED CUT STONE CO. et al. v. SEIDENBACH et al.**

No. 21661. Dec. 7, 1937.

Rehearing Denied Jan. 18, 1938.

Application for Leave to File Second Petition for Rehearing Denied Feb. 1, 1938.

C. A. Steel, W. A. Dougherty, H. L. Tallman, Aby & Tucker, Frank Settle, Robinson & Jones, Shirk, Danner & Phelps, Font L. Allen, H. L. Smith, Humphrey & Campbell, Gerald F. O'Brien, Hagan & Gavin, and Yancey, Spillers & Fist, for plaintiffs in error.

Samuel A. Boorstin, M. A. Breckenridge, John H. Cantrell, and Biddison, Campbell, Biddison & Cantrell, for defendants in error.

Geo. S. Ramsey, Villard Martin, and Garrett Logan, amici curiae.

580

McRILL, Special Justice.   This action arose out of the construction of a building in the city of Tulsa upon real estate belonging to J. L. Seidenbach, one of the defendants in error, and was instituted in the district court of Tulsa county, April 22, 1927, by Ed M. Lightfoot to foreclose a mechanic's lien he asserted against said property.  Various lien claimants were parties to the suit, as was the general contractor, J. W. Wilson, and the lien claimants filed pleadings asserting their respective liens.

The contract between Seidenbach and Wilson for the construction of the building was made August 26, 1926, and it was specified therein that the owner would pay the contractor "in current funds for the performance of the contract, one hundred twenty-eight thousand, one hundred forty-six ($128,-146) dollars subject to additions and deductions as provided in the general provisions of the contract."   It was also specified in the contract that the building should be completed on or before the 15th day of January, 1927, and that, in the event it was not completed upon that date, the owner should be entitled to damages against the contractor in the sum of $125 per day for each day thereafter until the completion of the building.  The time for completion was later extended until the 14th day of February, 1927. The contractor did not complete the building within the time contemplated, and on the 2nd day of April, 1927, the owner took over the contract for the purpose of completing the building, and thereafter continued with construction work until the 15th day of September, 1927, when the building was completed.

All the lien claims involved in this action accrued during the time the general contractor was in charge of the work.

The owner, J. L. Seidenbach, in his answer and cross-petition, claimed offsets against the various liens for delay in completion of the building, for costs of completing the same, for additional managerial and supervisory help, for defective work, and for attorney's fees.  He further claimed that any liability that may have existed to lien claimants had been discharged by payments to the general contractor, which payments had been in turn paid to the lien claimants, and that with such payments and the deductions claimed there was no balance available for the payment of lien claims.

The cause was referred to Robert D. Hudson, as referee, for trial.   Thereafter the referee made his report to the trial court.

Exceptions filed by the various lien claimants were overruled, the referee's report was adopted, and judgment was rendered in accordance therewith.   From this judgment, the lien claimants who appear here as plaintiffs in error appealed.

Twenty-four claims, totaling in amount $58,261.25, were filed.  Five of these, amounting to $10,971.04, were denied in full, while seven others were reduced in amount from $24,956.10 to $19,357.34.    The principal amount of unpaid claims, as determined and allowed by the referee, was $41,085.85.   Interest was allowed in the sum of $6,798.56, and attorneys' fees in the sum of $7,000, making a grand total of $54,884.41.

In determining the owner's liability for the payment of claims allowed, deductions from the contract price were made as follows:   Damages for delay in the completion of the building, from February 14, 1927, to September 15, 1927, at the rate of $125 per day, $26,625; for cost of completing the building, $55,239.69.   It was further found by the referee that out of the sum of $37,-660 paid by the owner to the contractor, $19,-445.57 has been applied in payment of preferred labor claims and should be deducted from the contract price.    Labor claims amounting to $978.52, including interest, and paid by the owner, were also found to be deductible, as were the costs of the suit, amounting to $13,194.15.   The sum of all these deductions being $115,502.93, the trial court held that the amount available for the payment of lien claims was $13,-143.07.

The court added to the sum of $54,884.41, which was the total amount of claims allowed, with interest and attorneys' fees, the sum of $12,616.69, which the court found had been paid by the contractor to lien claimants of equal rank with the claimants in this suit out of the sum of $37,660 paid by the owner to the contractor for payment of lienable claims, thus making a total of $67,501.10 to be prorated and paid out of said sum of $13,143.07.   The percentage of proration was therefore found to be .19471 plus.   The owner was given the benefit of said payment of $12,616.69 only to the extent that the sum was properly apportioned among lien claimants, and on that basis of calculation his liability to lien claimants holding unpaid claims was reduced by the judgment of the trial court to $9,061.01. Judgment was rendered against J. W. Wilson, the contractor, in favor of the lien claimants, in the principal sum of $49,-954.22, with interest in the sum of $8,241.32

and attorneys' fees in the sum of $7,275, making a total judgment of $65,470.54.

Before the case was tried, the owner, for the purpose of discharging the several liens against his property, made separate deposits of cash in the amount of each lien as filed, and posted separate bonds, all as provided by section 10980, O. S. 1931.

This appeal is prosecuted by Consolidated Cut Stone Company, a corporation, Patterson Steel Company, a corporation, J. B. Klein Iron & Foundry Company, a corporation, Builders' Supply Company, a corporation, Pickering Lumber Company, a corporation, Campbell Metal Window Company, a corporation, Mary A. Walker, United Brick & Tile Company, Standard Roofing & Material Company, and the Monohan Plastering Company, on a joint petition in error. Consolidated Cut Stone Company and Patterson Steel Company have filed supplemental individual petitions in error.

Some time after the appeal was lodged in this court, plaintiffs in error presented an application for the appointment of a special referee to take evidence and determine whether certain portions of a sum amounting to $46,250 recovered by the owner, after this case was tried, in settlement of a suit instituted by the owner against the surety on the contractor's bond, the Hartford Accident & Indemnity Company, covered items which the owner was permitted by the trial court to claim as offsets against lien claimants. It appears that during the proceedings in the trial court, the surety company was made a party to the litigation and the owner attempted to maintain a cross-petition upon said bond in connection with this litigation. The trial court sustained a motion of the surety company to dismiss as against it, and no appeal was taken from such order of dismissal.

The owner contends that very little of the amount recovered by him was in any way connected with the items allowed as offsets. This court, upon consideration of the application, decided that its jurisdiction in this case is appellate only, and that we cannot properly assume original jurisdiction to try and determine questions of fact and law which are not involved in the appeal. The rule that an appellate tribunal can in proper cases take cognizance of facts occurring during the pendency of the appeal, where the facts bear directly upon the questions presented by the appeal, is not applicable here for the reason that new and different questions of law not involved in this case when it was presented on appeal would be injected into the case. We therefore hold that the questions raised by the application are not before us for consideration, and we decline to pass upon the action of the trial court in dismissing the cross-petition against the surety company.

As a first ground for reversal of the trial court's judgment, plaintiffs in error assign error in offsetting against their lien claims damages for delay in completion of the building suffered by the owner. In the opening paragraph of their initial brief, they frankly state that they are at the outset confronted by the opinion of this court in J. B. Klein Iron & Foundry Co. v. Mays & Co., 76 Okla. 177, 184 P. 577, wherein the second paragraph of the syllabus reads:

"In a suit by a subcontractor to enforce a lien against the owner of the building, the owner may offset any actual damages which he has sustained, caused by the contractor's failure to complete the building in time, provided the damages are such as may be said to have been in the contemplation of the parties when the contract was made."

Plaintiffs in error then say: "It is apparent that we must either convince this court that this syllabus is not a correct statement of the law, or we must show that it is not applicable to the present case."

The opinion in the Klein-Mays Case, written by Justice Kane in 1919, followed Fossett v. Rock Island Lumber & Mfg. Co. et al., 76 Kan. 428, 92 P. 833, decided in 1907. Plaintiffs in error insist, however, that language used by Justice Kane in his opinion, together with the fact that the small amounts involved in the Klein-Mays and Fossett Cases may have made a difference in the way the cases were briefed and presented, "invites re-examination of the question when properly presented." Defendant in error J. L. Seidenbach replies that the rule announced in the Klein Case is a proper and sound construction of our lien statutes, and that the holding in this case, which has been reaffirmed by this court in Uhrich Millwork, Ltd., v. McGuire, 143 Okla. 16, 289 P. 264, and General Sports Co. v. Leslie & Walter Coombs Lbr. Co., 143 Okla. 297, 288 P. 949, should not be disturbed. We think defendant in error is correct in his contention.

The reasoning in the Fossett Case is, in our opinion, sound, and the construction there placed on the Kansas lien statutes,

from which the Oklahoma statutes were taken, seems to us to be in accord with legislative intent and principles of justice. The statute (section 10977, O. S. 1931) provides that any person who shall furnish material or perform labor as a subcontractor may obtain a lien "from the same time, in the same manner, and to the same extent as the original contractor, for the amount due him for such material and labor." Provision is then made for a lien by the employee of a subcontractor, and it is set forth how the lien shall be filed and what notice shall be given. Then follows a proviso, giving the procedure where the owner cannot be found in the county. Then this language: "Provided, further, that the owner of any land affected by such lien shall not thereby become liable to any claimant for any greater amount than he contracted to pay the original contractor."

The Kansas court left no doubt as to its construction of the last-quoted language. It was contended in the Fossett Case, as the plaintiffs in error contend here, that the subcontractor is not bound by any of the terms and conditions of the original contract except those terms which prescribe the amount the owner is to pay. It was conceded, as plaintiffs in error concede in this case, that any sums expended by the owner for labor and materials to carry out an abandoned contract could be deducted from the stipulated price in the contract. In this connection the court said:

"It seems difficult to give a reason for allowing the owner credit for additional sums paid to carry out an abandoned contract, and thus reduce the fund upon which the subcontractor may rely, which would not apply with equal force to the allowance of damages occasioned by the fault of the contractor in other respects."

Then follows language which seems to leave nothing further to be said by way of construction:

"The amount he contracted to pay was a certain sum, conditioned upon full performance of the contract according to its terms. Wright v. Pohls and Wife, 83 Wis. 560, 53 N. W. 848. Any damages resulting from the fault of either party, which could be said to have been in the contemplation of the parties at the time the contract was made, should properly figure in the amount the owner contracted to pay. If such damages resulted in his favor, the amount he contracted to pay would be so much less than the amount named. Stating it in different language, he contracted to pay a certain sum conditioned upon the fulfillment of the contract, and, if any damages were caused by the contractor, he agreed to pay as much less as the damages amounted to. The owner may recoup damages against the contractor, arising out of the failure of the latter to perform faithfully the contract, and without regard to the absence in the contract of specific terms providing for damages. He may show as against the contractor that the building was not completed, or not completed in time, or that defective materials were used. Why should he not be permitted to show these counterclaims when it is sought to recover against him by one who has no contractual relations with him, and who seeks to recover a debt due from the contractor? The only answer to this is that the statute fixes the extent of his liability to the subcontractor at the amount which he agreed to pay the contractor, regardless of whether the contract is fulfilled or not. Giving an offset for the cost of completing the building is, however, when analyzed, practically an allowance of damages for failure to complete. The measure of damages is the ascertained cost of completion, but the principle is the same as though the contract provided for a certain sum as liquidated damages for each day's delay, and numerous decisions authorize the allowance of damages liquidated in this manner by the terms of the contract, even in suits to enforce a subcontractor's lien."

Quotation is made from Phillips on Mechanics' Liens, section 62g, as follows:

"The authorities seem to be unanimous that, where the extent of the owner's obligation to pay is limited to the price stipulated in his contract, the subcontractor's right is confined to what may be due the contractor after the completion of the contract."

The point in the Fossett Case is that the provision of the statute that the owner shall not become liable to any claimant "for any greater amount than he contracted to pay the original contractor" means not the "stipulated price" set out in the contract, but the amount due from the owner under all the terms of the contract.

It is insisted by the plaintiffs in error that language used in Klein v. Mays, supra, raised some question as to the soundness of the construction in the Fossett Case. The opinion by this court reflects no argument against the conclusions reached by the Kansas court, nor does it suggest any different construction of the statute. The issues in the two cases were identical, as is the language of the syllabi. Moreover, there was no dissent from Justice Kane's decision. We think it clear that the reasoning in the Fossett Case was adopted as the reasoning in the Klein-Mays Case.

It is further argued by plaintiffs in error that the question of damages for delay in completion in time was not squarely presented in either General Sports Co. v. Coombs Lumber Co., supra, or Uhrich Millwork, Ltd., v. McGuire, supra. Counsel for defendant in error J. L. Seidenbach have analyzed the briefs and records in these two cases and insist that damages for delay was the chief issue in each case. These documents are not before us, but we can reach no other conclusion than that this issue was squarely presented in these cases. In the General Sports Co. Case the fourth paragraph of the syllabus passes directly on the question of damages for delay, and is identical with the syllabus in the Klein-Mays Case passing on this question. In the opinion, after quoting in full the complete syllabus in Klein v. Mays, this court says that the case is "squarely in point," and that "we follow it, as, in our opinion, the rule therein announced is sound." Then, in remanding the case for retrial, the court calls the trial court's especial attention to the rule in Klein v. Mays, on the question of damages for delay and directs the case be retried on the law as laid down therein. In Uhrich Millwork, Ltd., v. McGuire, the second paragraph of the syllabus is a restatement of the syllabus in Klein v. Mays and is expressly entitled as such. Unquestionably the offset against the "trust fund" authorized in each of these two cases is damages "caused by the contractor's failure to complete the building in time." So, we conclude that this court is definitely committed to the rule that in a suit by a subcontractor to enforce a lien against the owner of the building, the owner may offset any actual damages which he has sustained, caused by the contractor's failure to complete the building in time, provided the damages are such as may be said to have been in the contemplation of the parties when the contract was made.

We think we are further supported in our conclusions by the decisions of this court construing our oil and gas well lien statutes (sections 7464, as amended, 7466, C. O. S. 1921; sections 10978, 10979, O. S. 1931). It is provided in section 10977, supra (7463, C. O. S. 1921), that

"Any person who shall furnish any such material or perform such labor as a subcontractor * * * may obtain a lien * * * from the same time, in the same manner and to the same extent as the original contractor for the amount due him."

This provision, which creates and grants the lien, defines clearly the limitation of the lien. The section then provides for the filing of the lien and the serving of notice. Then appears the first proviso of the section, which sets out the procedure to be followed where service cannot be made upon the owner which authorizes service upon the occupant of the owner's land, or if the land is unoccupied, a posting of the notice on the land. The provision for the court clerk filing and docketing the lien statement follows. Then the second proviso:

"Provided, further, that the owner of any land affected by such lien shall not thereby become liable to any claimant for any greater amount than he contracted to pay the original contractor."

We do not perceive that this proviso adds anything to the provision creating and granting the lien, nor that it detracts in any respect from it. A lien is granted the subcontractor "to the same extent" it is granted the contractor. The proviso limiting the liability of the owner to subcontractors to the amount he contracted to pay the contractor is but another way of saying that the liens of the subcontractor and the contractor are "to the same extent" and subject to the same limitations. The proviso is used, we think, after the various provisions as to perfecting the lien, obtaining service and filing, to re-emphasize the limitation upon the lien of the subcontractor.

Answer is made by plaintiffs in error that the language, "to the same extent," "does not limit the amount of said subcontractor's lien in any way, except that it is limited to 'the amount due him for such material and labor.'" Academic discussion, extended, if not illuminated, by judicial definitions, might be carried on as to the precise meaning of the words, "to the same extent," but the decisions of this court, construing section 10979, supra, in the so-called oil and gas well lien cases, seem to have prophetically forestalled such an intriguing discussion.

It is provided by this section that the subcontractor who furnishes material or labor in any of the many instances enumerated in the statute may obtain a lien upon the leasehold, etc., "from the same tank (time) and in the same manner and to the same extent as the original contractor." This language is identical with the language of section 10977, supra, creating and granting the subcontractor's lien under the general statute. This court has uniformly held that section 10979 gives the subcontractor a lien only when the contractor has a lien, and that the subcontractor's lien can be obtained in no great-

er amount than is due the contractor under his contract. Christy v. Union Gasoline Co., 28 Okla. 324, 114 P. 740; Brenner Oil Co. v. Dickason-Goodman Lbr. Co., 108 Okla. 257, 236 P. 44; Cameron Refining Co. v. Jerman, 110 Okla. 272, 238 P. 437; Josey Oil Co. v. Ledden, 162 Okla. 262, 20 P. (2d) 582; Murray Tool & Supply Co. v. Bridgeport Machine Co., 164 Okla. 136, 23 P. (2d) 165; Conservation Oil Co. v. Graper, 173 Okla. 127, 46 P. (2d) 441; Thacker v. International Supply Co. et al., 176 Okla. 14, 54 P. (2d) 376; Haggard et al. v. Sunray Oil Co., 176 Okla. 81, 54 P. (2d) 662.

We do not see by what process of reasoning this court should be expected to construe the language used in section 10979 to limit the subcontractor to a lien in no greater amount and to no greater extent than the original contractor has, and then construe identical language in section 10977 to impose no limitation whatever on the subcontractor as to the **amount** of his recovery under his contract. The conclusion in Fossett v. Rock Island Lumber & Mfg. Co., Klein v. Mays, Uhrich Millwork, Ltd., v. McGuire, and General Sports Co. v. Coombs Lbr. Co., is the same, as we view it, as the conclusion in the oil and gas well lien cases, namely, that the subcontractor's lien is limited to the amount owing from the owner under his contract with the contractor, and that such amount owing is essentially the same as the amount the owner contracted to pay. Whether the owner is obligated to the contractor to no extent whatever by reason of breaches of the contract or failure to perform, as was true in several of the cases decided by this court, or whether there is limited liability by reason of contractual provisions, the principle is the same. In every case there must be liability to the original contractor. The oil and gas well lien cases are not based on failure to perform, but on **absence of indebtedness.** What is the owner obligated to pay under his contract? Always that is the primary and controlling question.

Plaintiffs in error urge that the cases under section 10977 are to be distinguished from those under section 10979 in the further particular that the amount the owner "contracted to pay," under the provisions of section 10977, is by the statute made a "trust fund" out of which lien claimants are to be paid. The statute does not make such an amount a trust fund, but the principles of equity. The statute creates the lien. Whatever amount is owing under the **principal** contract from the owner to the contractor is a trust fund for the payment of liens, whether the contract is to erect a building under conditions imposed by the general lien statutes, or to furnish material or perform labor on an oil and gas leasehold under rights fixed by the oil and gas well lien statute.

The further point is made by plaintiffs in error that the provisions of the contract relating to damages for delay do not permit such damages to be paid out of the fund for the payment of liens. The portion of the contract referred to is as follows:

"* * * And since, in the event of the contractor's failing so to furnish and deliver up said works within the time specified herein, the damage and injury to the owner is difficult of computation and ascertainment, the parties have hereby agreed to compensate the owner by paying to the owner for such delinquency the sum of one hundred twenty-five dollars ($125) for each day beyond said 15th day of January, 1927, or such extended period as herein provided; and such contractor hereby agrees to allow and pay out of any balance that may then remain due and payable to him such sum of one hundred twenty-five dollars ($125) per day for each delinquent period that the said works remain unfinished and undelivered, as aforesaid, beyond the day or time agreed upon for that purpose."

It is urged that, under these provisions, there could be no allowance for delay damages in this case, since there could be no balance due on the contract until after all lienable claims were paid. As we view it, this is but another way of assailing the doctrine of Klein v. Mays. Under the rule that delay damages take precedence over the claims of subcontractors, and should be deducted from the contract price in determining what balance is due and available under the contract for the payment of such claims, it follows necessarily that the fund available for the payment of delay damages cannot be limited to the amount due under the contract after all subcontractors' claims are paid. It was manifestly the intent of the parties that whenever the building was completed, and the amount of delay damages, if any, were ascertainable, the owner should be entitled to offset such damages against any unpaid balance that would otherwise be due from the owner under the contract. We believe that is the reasonable construction to be given the language used, especially in view of the clear legal right which the owner had to offset damages for delay.

The contention that the subcontractors had *no notice* of the owner's right to offset damages for delay, and that the provisions

of the contract granting such offset is not binding on them, is likewise without merit.. Without 'analyzing the various provisions of the several contracts to determine what, if any, notice was brought home to the sub-contractors by the contracts themselves, we hold, first, that the law permitting such offset was actual notice to them, and, second, that a subcontractor would have to have knowledge of the terms of the original contract affecting the amount to be paid the contractor in order to make his own contract, and furnish his material in accord and compliance with the same. Dolese Bros. v. Andrecopulas, 113 Okla. 18, 237 P. 844. The fact that, under the holding in the Fossett Case, the written contract might have been silent as to damages for delay, and the owner still have been entitled to such damages because they were in the contemplation of the owner and the contractor, would put all sub-contractors on notice that damages for delay would be offset against their claims, unless the owner and the contractor had failed to contemplate such damages. It therefore became the duty of the subcontractor to search the contract, and to make all reasonable inquiry, to ascertain whether the owner and the contractor had contracted in respect to offsetting damages for delay in the completion of the building.

Plaintiffs in error next assail the right of the defendant in error J. L. Seidenbach to recover damages for delay, because, as they urge, he failed to discharge a duty resting upon him to make all reasonable efforts to render his injury as light as possible. We think the law in this respect is succinctly stated in Bailey v. J. L. Roebuck Co., 135 Okla. 216, 275 P. 329. That was a case where the seller breached an implied warranty in the contract of sale. This court held that it was the buyer's duty to make reasonable exertions to mitigate his injury or damage, and that he would not be permitted to recover from the seller damages which could and would have been avoided, had the buyer performed such duty. This pertinent language was then used:

"This duty is required of persons claiming damages generally. However, where one has sustained an injury, or suffered damages on account of the negligent act of another or the breach by another of a contractual right, the failure, on the part of the injured party, to make reasonable effort to reduce or minimize his damages will not entirely defeat a recovery. The duty imposed upon one to reduce or minimize his damage goes only to the amount of recovery, and cannot be an absolute defense to an injury already sustained. As to whether defendant performed such duty, and, if not, how much his damage was enhanced by his failure to do so are questions of fact to be determined by a jury, or by the court in a trial without a jury."

To the same effect is Sackett et al. v. Rose, 55 Okla. 398, 154 P. 1177, L. R. A. 1916D, 820, followed in the recent case of Staner v. McGrath, 174 Okla. 454, 51 P. (2d) 795, where the well-established rule is reaffirmed that the burden of introducing evidence in mitigation of damages to show that the damages claimed were in part avoidable is upon the party presenting the issue. The court observed:

"An examination of the record in this case fails to disclose that the defendant herein assumed or discharged this burden in the trial of this case. In fact, an examination of the pleadings and evidence herein discloses that the case was not tried upon this theory in the court below, and, under the rule long established in this jurisdiction that a case will not be reviewed in this court upon a theory not presented to the trial court, we will not further analyze the contention in this opinion."

Other cases in point are: Higgins v. Cauhape (N. M.) 261 P. 813; Federal Reserve Bank of Dallas v. Upton (N. M.) 285 P. 494; City of Paragould v. Arkansas Light & Power Co. (Ark.) 284 S. W. 529; Amarillo Oil Co. v. Ranch Creek Oil & Gas Co. (Tex. Civ. App.) 271 S. W. 145.

We are of opinion that the burden of establishing the defense of mitigation of damages was not discharged by plaintiffs in error. Patterson Steel Company pleaded specially "that the defendant, J. L. Seidenbach, at the termination of the performance of said contract by J. W. Wilson did not proceed to complete said contract of said building diligently, but unnecessarily delayed the completion thereof; that unnecessary delay both by J. L. Seidenbach and his agents caused the delay of three months in the completion of said building after it was taken over by the defendant, J. L. Seidenbach." This allegation is not supported by evidence. There is no evidence to show that Seidenbach did not proceed in the prosecution of the work with all reasonable diligence. It is true that a period of nearly five and a half months was consumed by the owner in completing the building, but plaintiffs in error did not introduce evidence to show any unreasonable delay on the part of the owner, nor to show that the building, under the circumstances, could have been completed in less time.

On the other hand, the owner showed

clearly th'at he proceeded with reasonable dispatch; that he was anxious to have the building completed as soon as possible; that he was delayed in getting a new contractor, and the new contractor had to use considerable time in making a survey of the subcontractors' contracts and work; that there were disputes as to these contracts, and a serious controversy with one of the largest lien claimants who w'as raising its over-all price for the iron work 'by several thousand dollars; that the owner was on the job constantly, without pay, and urged all workmen to work "as fast as they could;" that the contractor employed by the owner was thoroughly competent; that the work was delayed by failure of certain subcontractors, plaintiffs in error here, to do their work promptly and strictly according to contract; that one subcontractor having one of the largest claims had only about 40 per cent. of its material ready for delivery when the owner took over the building, although the building should have been completed more than two months 'before. In brief, the owner himself, on the trial of the case, seems to have assumed the burden of showing that he prosecuted the work with reasonable diligence, 'and we are of opinion that the evidence shows clearly that there was no unreasonable delay in completing the 'building.

It should be observed further, in connection with this question of delay damages, that there is in this case no plea of fraud or bad faith in the m'aking of the original contract, or in the conduct of the owner before or after the abandonment of the work 'by the original contractor.' Fraud or bad faith or unreasonable delay, charge'able to the owner, would, of course, be proper matters of defense in proceedings by the owner to offset delay d'amages. But these defenses have not been made in the present case, and we are of opinion that the finding of the trial court as to the extent and amount of damages sustained by the owner is abundantly supported by the evidence.

The contention is made 'by plaintiffs' in error that the owner 'and architect had knowledge of the breach of the contract by the contractor, and that the owner by not rescinding the contract waived all damages accruing subsequent to the time of the breach. It is answered by defendant in error th'at such waiver w'as not properly pleaded, and that · therefore evidence in support thereof was clearly inadmissible.

Passing the question of pleading, we think this issue was properly decided against plaintiffs in error. This is not a case where the owner failed to rescind · and the contractor went ahead and completed the building. Even under such circumstances the owner would not waive his right to recover damages for unreasonable delay. See Elliott on Contracts, section 3681, and section 3715, where it is said:

"The fact that an owner failed to exercise his option to take possession of the building and complete it on 'breach of the contract by the contractor, does not estop him from recovering because of the delay of the contractor, who finished the work after the stipulated time."

In the present case, the contractor did not complete the work, but ab'andoned it and left the completion to the owner. Again (section 3722, Id.), this same author says that where the owner completes the building on default of the contractor, he may still sue the contractor for damages, and "the right of the owner to damages for bre'ach of the contract is not waived 'by his failure to to take charge of the building on default of the contract."

The conclusions of this eminent author are abundantly supported by authority. See United States v. U. S. F. & G. Co. et 'al., 236 U. S. 512, 35 S. Ct. 289, 59 L. Ed. 696; Stevens v. Essex County Park Com., 143 Fed. 844; Frankfort-Bennett Co. v. Willian Prym Co., 237 Fed. 21; Purington Brick Co. v. Metropolitan Paving Co., 4 F. (2d) 676; Gerber v. Borderland Coal Sales Co., 5 F. (2d) 278; R. B. Boak & Co. v. U. S. Shipping Board, 11 F. (2d) 523; Cohn v. U. S. Shipping Board, 20 F. (2d) 56; Mitchell v. Williams, 80 N. Y. S. 864; Mikolajewski v. Pugell, 114 N. Y. S. 1084; General Supply Co. v. Goelet (N. Y.) 148 N. E. 778.

It should also be noted th'at the owner in the present case did not rescind the contract, but took over the completion of the contract according to the terms thereof. We think the judgment of the trial court, based as it must have been on a finding from the evidence that the owner was entitled to damages in the amount awarded, is reasonably supported by the evidence.

It is further insisted that the owner, by remaining silent as to his intention to make a claim for damages, and allowing lien claimants to furnish m'aterials for his building, 'after default of the contractor, is now estopped from offsetting damages for delay. This issue of estoppel is not pleaded. It is axiomatic in this state that an estoppel must be pleaded with particul'arity in order to constitute either a cause of action or defense. Tonkawa Milling Co. v. Town of Tonkawa, 15 Okla. 672, 83 P. 915; Ins. Co,

of State of Penn. v. Harris, 49 Okla. 165, 152 P. 359; Bunker v. Harding, 70 Okla. 263, 174 P. 749; Clem Oil Co. v. Oliver, 106 Okla. 22, 232 P. 942. "No intendments are made in favor of a plea of estoppel; but it is incumbent upon the party pleading it to aver all facts essential to its existence." Holt v. Holt, 23 Okla. 639, 102 P. 187; Cooper v. Flesner, 24 Okla. 47, 103 P. 1016, 23 L. R. A. (N. S.) 1180, 20 Ann. Cas. 29. In Newman v. Roach, 111 Okla. 269, 239 P. 640, it was said that the burden is on the party asserting estoppel to plead and prove every element constituting it, and that this rule is in accord with the general current of authorities in Code states, citing Farmers State Bank of Ada v. Keen, 66 Okla. 62, 167 P. 207, and other Oklahoma cases.

The essential elements of an "equitable estoppel" are set out in Gypsy Oil Co. v. Marsh, 121 Okla. 135, 248 P. 329, 48 A. L. R. 876, as follows:

"First, there must be a false representation or concealment of facts; second, it must have been made with knowledge, actual or constructive, of the real facts; third, the party to whom it was made must have been without knowledge, or the means of knowledge, of the real facts; fourth, it must have been made with the intention that it should be acted upon; fifth, the party to whom it was made must have relied on, or acted upon, it to his prejudice."

Several of the replies filed by lien claimants who appear here as plaintiffs in error were general denials only. Patterson Steel Company, in an amendment to its reply, alleged that the owner waived any claim for damages for delay because both he and the architect knew of Wilson's neglect to prosecute the work properly, and because he failed to avail himself of the provisions of the contract, either to make good the deficiencies of the contractor or terminate his employment and take charge of the work; that the owner allowed the contractor to continue long after the time fixed for the completion of the building and made large payments on estimates approved by the architect to the contractor shortly before and also after the time fixed for the completion of the building. The reply of Superior Weatherstrip & Calking Company pleads that certain extras should be added to the contract price, in determining the amount available for payment of lien claims; that amounts expended by the owner in completing the building were unreasonable, and that changes made by the owner increased the cost of the building. The reply of Consolidated Cut Stone is similar to that of Superior Weather-

strip. Campbell Metal Window Corporation, in its reply, pleaded that the provision for liquidated damages for delay was invalid; that the owner waived his right to dispute lien claims because he elected to enforce his rights against the surety on the contractor's bond; that said claimant was familiar with the terms of the building contract whereby the owner required a bond from the contractor, and that it would not have furnished material had it not known that a good and sufficient bond was to be required from the contractor; that the owner was estopped to deny the right of claimant to enforce its lien by reason of the fact that the owner was fully indemnified by the said bond, either upon abandonment of the work by the contractor or upon his discharge by the owner.

Only two of these pleadings raise the issue of waiver, and in none of them are the essential elements of estoppel pleaded. The only claimant who specifically pleaded an equitable estoppel in any particular based such plea on the admission that it searched the contract and relied upon the provision therein requiring the contractor to give a bond to insure the faithful performance of his contract. Such is not the issue of estoppel urged in the briefs of plaintiffs in error, as appears from the allegations of the pleadings referred to.

Nor is there evidence to establish equitable estoppel. If the owner had been under an imperative duty to speak, the representation or concealment on his part might have been inferred from his silence, and his intention that the representation or concealment be acted upon might have been inferred from circumstances. Gypsy Oil Co. v. Marsh, supra. But the facts in this case do not show a duty resting on the owner to speak. The law plainly gave him the right to offset damages for delay, as did his contract. His contract gave him the further right to take over the work on default of the contractor without affecting any of his other rights or remedies under the contract. His right to damages for delay being clear, there was no reason why he should question the lien claimants' knowledge of either the law or the terms of the contract, so far as they related to such damages. It was not his duty to speak, but their duty to inquire. Thus there is lacking the first essential element of an equitable estoppel, a false representation or concealment of facts.

Passing the conduct of the owner and its bearing on the question of estoppel, there is lacking the equally essential element of want

of knowledge, or the means of knowledge, of the real facts, on the part of the lien claimants. The burden was on the claimants to establish this element. What is more, we think the facts and circumstances disclosed by the evidence warrant the conclusion that the subcontractors had knowledge of the provisions of the contract respecting the date of completion, extensions of time, and damages for nonperformance, as well as knowledge of conditions as they actually existed up to the time the owner took over the work. It would be a capricious prescience that led a lien claimant to search the contract to learn whether a bond would be required to protect the fund that might be available for the payment of his claim, and did not at the same time direct his inquiry to matters that would determine what, if any, fund there might be to invoke the protection of such bond. Since the law gave the owner the right to offset damages for delay, every part of the contract affecting the question or extent of delay damages was essentially a matter of such concern to lien claimants as to suggest inquiry from them. While we think as a matter of law, under the holding in Klein v. Mays, lien claimants had notice of all contractual provisions relating to the question of damages for delay, we cannot help concluding also that they were not so far wanting in prudence as not to acquaint themselves with such provisions, as well as with conditions as they existed during the progress of the work under the contract, and were not therefore led to do any of the things they did or did not do by any conduct on the part of the owner.

We may fairly assume that these subcontractors were not novices in the construction business, but were, on the other hand, materialmen of wide experience. They contracted voluntarily with the same contractor the owner contracted with. They individually passed on the responsibility of such contractor. They delivered materials and accepted payments on account after the time for completion of the building had passed. They were in as good a position to get information from the contractor or the architect as was the owner. The work was all being done in the open and the progress of the contractor was there to speak for itself to all who cared to lend an ear. The subcontractors knew their rights, and the rights of the owner. While they were delivering their last materials, damages at the rate of $125 per day were being offset against the fund they were looking to for payment of their claims, and with their full knowledge. If they desired to know whether the owner intended to relinquish the rights he had under the law and under his contract, they were free to make inquiry, and it became their duty to make inquiry if they intended to question either his legal or contractual right to claim damages for delay. Until they made such inquiry and were induced by representations on the part of the owner to act to their prejudice, there could be no basis for equitable estoppel.

The question of equitable estoppel is to be decided upon the particular circumstances of each case. Nickel et al. v. Janda et al., 115 Okla. 207, 242 P. 264. Neither the facts nor the circumstances of this case, as disclosed by the evidence, are sufficient to establish an equitable estoppel against the defendant in error J. L. Seidenbach on his claim for damages on account of delay in completing the building.

The next contention of plaintiffs in error is that "A building contract requiring the contractor to perform all of many things named in the contract, which contains a provision that in the event the contract is breached, the owner is entitled to liquidated damages for such breach, is void as to the damage provision, unless a breach occurs as to every one of the things in the contract named as constituting a breach." The issue here is not the one thus presented by plaintiffs in error, but whether, where a building contract provides for the payment of liquidated damages in a certain sum for delay in the completion and delivery of a building, and by the terms of the contract such damages are to compensate for delay, and delay only, the breach of other terms, covenants or conditions of the contract, is in any way involved in the right to recover the stipulated damages for delay. Plaintiffs in error direct attention to page 951, section 247, vol. 17, Corpus Juris, but quote only a portion of the section. This section reads:

"Where the agreement contains several distinct and independent covenants upon which there may be several breaches, and one sum is stated to be paid upon breach of performance, that sum will be considered a penalty and not liquidated damages. If the party would stipulate the damages in such case, they should express the sum to be paid upon each distinct breach. This rule does not, of course, apply where, although the contract provides for the performance of several acts by the parties thereto, the stipulation for the payment of a stated sum is only in case of a breach of all conditions. * * * Further, although the contract requires the performance of several acts, it is competent for the parties to provide that failure to perform certain of such

acts shall impose a liability in liquidated damages, while a failure to perform other acts shall entail only such damages as are imposed by the general principles of law."

In support of the right to provide for liquidated damages for the breach of a specific provision of the contract, see Leggett v. Mutual L. Ins. Co., 53 N. Y. 394; City of Topeka v. National Surety Co. (Kan.) 11 P. (2d) 1034; Kansas City v. Industrial Gas Co. (Kan.) 28 P. (2d) 968; Irvin v. Lambert (Tex. Civ. App.) 70 S. W. (2d) 495. The case of City National Bank v. Kelly et al., 51 Okla. 445, 151 P. 1172, is cited by plaintiffs in error. There the contract set out several things for the defaulting party to do, and provided for $1,500 damages in case of failure to perform the contract. This court held the provisions applied to **the entire contract**, and not to any one of the independent conditions. Similar situations were presented in City of El Reno v. Cullinane et al., 4 Okla. 457, 46 P. 510; St. L. & S. F. Ry. Co. v. Shoemaker, 27 Kan. 677; Raymond v. Edelbrock et al. (N. D.) 107 N. W. 194, and Western Macaroni Mfg. Co. v. Fiore (Utah) 151 P. 985, cited by plaintiffs in error. Manifestly these cases are not in point. The present case comes squarely within the rule that, where a contract requires the performance of several acts, it is competent for the parties to provide that failure to perform any certain act shall impose a liability in liquidated damages for that particular failure, while a failure to perform other acts shall entail only such damages as are provided specifically for such failures, or are imposed by the general principles of law. It follows, therefore, that the provision of the contract for liquidated damages in case of delay is valid and enforceable.

The assignments of error that the trial court erred in not assessing the costs, interest and attorneys' fees against the defendant in error, J. L. Seidenbach, and in not rendering a personal judgment against him for costs and attorneys' fees, may be considered together. We do not deem it necessary to discuss the powers of a court of equity to assess and apportion costs and attorneys' fees in actions of this nature, or to determine when an owner may be properly chargeable with interest, or to pass on the court's authority to render a personal judgment for costs, including attorneys' fees, where attorneys' fees are assessable under section 11021, O. S. 1931. This case, so far as the assessing of attorneys' fees, court

costs, and interest are concerned, is, in our judgment, controlled entirely by section 10980, O. S. 1931, which reads:

"Any person against whom a claim is filed under the provisions of the law relating to mechanics' and materialmen's liens may at any time upon three (3) days notice in writing to the claimant discharge such lien by depositing with the court clerk in whose office such lien claim has been filed the amount of such claim in cash and executing and filing with such court clerk a good and sufficient bond to the claimant and with adequate, solvent sureties conditioned that such person will pay any reasonable attorney's fee and all court costs, and interest, that may be adjudged against him finally by any court of competent jurisdiction in the event such claimant recovers judgment on such claim in the amount for which such claim is filed; provided, the deposit of such cash and the execution and filing of such bond shall not operate to discharge such lien until the expiration of five (5) days after the deposit of such cash and the filing of such bond, during which time the lien claimant may apply to such clerk to have the surety on such bond increased, and if upon such investigation the bond proves to be insufficient the clerk shall immediately require such additional surety thereon as may be necessary to make such bond solvent, and the lien shall not be discharged until any additional surety ordered shall have been given and approved. In any suit on such claim the sureties on such bond may be made parties defendant and judgment may be rendered in such action on the bond for whatever amount the court may decree for reasonable attorney's fee, costs of suit and interest, but in the event the lien claimant does not recover judgment finally for the full amount of the cash deposited no liability shall exist upon said bond and no judgment shall be rendered thereon for any amount, and the balance of such cash deposit over and above the amount of the claim filed shall be returned by such clerk to the person depositing the same. Appeals may be taken by any party to the action in the same manner and to the same extent as in other civil actions."

It is contended that this section does not in any way affect other statutes governing the power of the court to tax costs and allow attorneys' fees in actions to enforce liens, and that it should be construed to mean that there is no liability on the posted bond until the cash deposit has been exhausted by a judgment against the owner, which judgment may include costs, interest and attorneys' fees, as well as the principal of the lien claimed. The argument is that the "judgment" referred to in the provision

of the statute, "* * * but in the event the lien claimant does not recover judgment finally for the full amount of the cash deposited, no liability shall exist upon said bond," is intended to include the entire amount of the judgment finally obtained by the claimant against the owner under the lien law, embracing items of principal, interest, attorneys' fees and costs. In this connection attention is called to that provision of section 10980, reading:

"* * * And the balance of such cash deposit over and above the amount of the claim filed shall be returned by such clerk to the person depositing the same."

All parties agree that the words "claim filed" are used erroneously. Plaintiffs in error contend that the words should be changed to "judgment rendered." This change would strengthen the argument that the intent of section 10980 was that there should be no liability on the posted bond until the cash deposit should be exhausted by the judgment rendered, and they urge, therefore, that the Legislature must have intended to make the owner and his sureties liable on the bond for attorneys' fees, costs and interest, if any sum whatever be rendered on the lien claimant. On the other hand, the owner contends that the words "claim filed" should be changed to "claim allowed." This change obviously strengthens the owner's contention that the intent of the statute is to allow an attorney's fee, costs and interest only when the deposit is fully exhausted by the allowance of the claim in full as filed. We think the owner's contention is sound.

The bond for attorney's fee, court costs and interest is given on the express condition that the person making the bond shall pay "any reasonable attorney's fee and all court costs, and interest, that may be adjudged against him finally by any court of competent jurisdiction **in the event such claimant recovers judgment on such claim in the amount for which such claim is filed.**" Plainly, attorneys' fees and costs yet to be allowed and incurred could not be considered a part of the "amount for which the claim is filed." This condition of the bond, it seems clear to us, can mean only that the claimant must recover judgment in full against the owner for the principal amount of his claim before there is liability on his bond for attorneys' fees, costs, and interest. The judgment finally recovered, in order to make operative the condition of the bond, must necessarily be the judgment against the owner for the full amount of

the claim as filed. To construe the latter part of the section to permit a recovery on the bond for attorneys' fees, costs, and interest, not in the event such claimant recovers judgment "in the amount for which such claim is filed" (the express condition of the bond), but **in the event the cash deposit is not sufficient to pay attorney's fee, costs and interest,** would not only constitute a clear repugnancy in the statute, which is to be avoided if possible, but would be to change and extend the obligation under the bond. We do not think the statute needs to be construed so as to constitute any repugnancy, but if there is any seeming conflict in the several provisions of the section, the provision on which the bond is expressly conditioned should be deemed to be controlling.

We are fortified in these conclusions by the decisions of this court. Williams v. Mays Lumber Co., 149 Okla. 201, 299 P. 885; Raitman v. McCune, 167 Okla. 511, 30 P. (2d) 878; Detroit Graphite Co. v. Carney, 175 Okla. 583, 53 P. (2d) 584. In Williams v. Mays Lbr. Co., supra, the lien claimant obtained judgment for the full amount of her claim as filed, and for attorney's fee, costs, and interest. After this judgment was rendered, the owner made a cash deposit to cover the principal amount of the claim, which was, it will be noted, the amount for which the claim was filed and for which judgment was rendered, and posted a bond to cover the attorney's fee, costs, and interest. Supersedeas bond was then given and time taken to appeal. The following day an ex parte order was made by the trial court, directing the clerk to turn over the cash deposit to the plaintiff in satisfaction of the principal amount due, and further directing the clerk not to enter a discharge of the lien. The order also decreed that the judgment for attorney's fee, costs, and interest should continue in force to be paid out of the bond. This court held that the trial court was unauthorized to direct the payment of the cash deposit to plaintiff until a final judgment was rendered, and that the order directing the clerk not to enter a discharge of the lien should be vacated. Justice Riley, writing the opinion, said:

"* * * As we view the section referred to, defendant had the right at any time before the judgment of plaintiff became final to have her property discharged from the lien by complying with section 7465, supra. That section does not limit the time within which the property may be so discharged. The clear purpose of the section

referred to is to enable one to discharge his property from a lien claim by giving the proper security for the payment thereof and thus enable him to deal with his property free from such claims while the validity of the lien is being contested. This right ought and was doubtless intended to extend and continue until the final adjudication of the claim, not alone in the trial court, but upon appeal to this court. * * * The order directing the clerk not to enter a discharge of the lien should be vacated. Plaintiff is entitled to look to the bond for the payment of costs and attorney's fees."

In Raitman v. McCune, supra, judgment was rendered on a verdict of the jury for the full amount of the claim as filed, $759.25, and the court allowed an attorney's fee in the sum of $300. There were nine assignments of error, but only two assignments were passed on by this court. The first assignment raised the primary question as to whether the contract had been complied with and plaintiff was entitled to a judgment as prayed. The finding of the jury was accepted as conclusive on that point. In passing on this assignment, this court again speaking through Justice Riley, said:

"The jury by its verdict must have found the contract price to be that claimed by the plaintiff, otherwise, the verdict could not have been **for the full amount claimed.**"

The second assignment raised squarely the right of the plaintiff to have judgment for an attorney's fee. This court calls express attention to the fact that **"the conditions of the bond** required by the statute are that the person giving it will pay any reasonable attorney's fee and all court costs and interest that may be adjudged against him by 'any court of competent jurisdiction in the event such claimant recovers judgment on such claim in the amount for which such claim is filed." After reciting the further provisions of the statute, this court says:

"It will thus be seen that the owner, by making the deposit and giving the bond under said section, not only procured a release of the lien, but preserves his right to contest the claim, and, in the event he is able to defeat recovery **for the full amount of the claim,** he is not liable on the bond for any attorney's fee.

"Plaintiff, having obtained judgment **for the full amount of his claim,** is entitled to such reasonable 'attorney's fee as the court may decree.

"The trial court, upon hearing, fixed the amount of attorney's fee at $300. Defendant makes no claim that the attorney's fee is excessive or unreasonable. The judgment is affirmed."

The syllabus of the court consists of three paragraphs, two of which cover the first assignment of error discussed. the third paragraph covers the second assignment, or the one relating to attorney's fee, and reads:

"Where, in an action to foreclose a mechanic's lien, it is pleaded, and at the trial it is agreed, that defendant has made the deposit and given the bond provided for in section 7465, C. O. S. 1921, the lien claim of plaintiff is thereby discharged, and the deposit so made stands in lieu of the lien, and the bond secures the attorney's fee, but defendant may nevertheless contest the right of claimant to recover **the amount claimed,** in his lien statement. If he recovers judgment as **for the lien claimed,** plaintiff is then entitled to' recover a reasonable attorney's fee to be fixed by the court."

This decision was concurred in by Vice Chief Justice Cullison and Justices Andrews, Osborn, and Busby, and there was no dissent. We cannot agree with the contention made that the question as to when a party is entitled to an attorney's fee under section 10980, O. S. 1931 (section 7465, C. O. S. 1921), was not involved in the Raitman Case, nor can we agree that the language by Justice Riley on the matter of attorney's fee was dictum. After quoting the statute, the opinion says:

"Plaintiff, having obtained judgment for the amount of his claim, is entitled to such reasonable attorney's fee as the court may decree."

Why the use of the clause, "having obtained judgment for the amount of his claim," if it has no significance? If it is meaningless, the court would have simply said: "Plaintiff is entitled to such reasonable attorney's fee as the court may decree." Or, if the court had had in mind that the lien claimant was entitled to an attorney's fee regardless of the amount he recovered judgment for, as would have been the case if section 10980, supra, had not been invoked, the court would have used the language and followed the holdings in Hutchinson Lumber Co. v. Scrivener, 91 Okla. 293, 217 P. 854, and Morley v. McCaskey, 134 Okla. 50, 270 P. 1107, and said:

"Plaintiff, having obtained j u d g m e n t against the contractor and owner for a greater amount than that admitted by the contractor and owner, is entitled to such reasonable attorney's fee as the court may decree."

We have no doubt that if the judgment in the Raitman Case had been for less than the amount of plaintiff's claim, the language in the opinion would have read: "Plaintiff, having obtained judgment for less than the amount of his claim is **not** entitled to an attorney's fee."

We are forced to conclude that this decision has definitely passed on the question of liability for attorneys' fees, court costs and interest under said section, that the decision follows the clear command of the statute, and that we are bound to accept it as the law of the present case.

But if, after Williams v. Mays Lbr. Co., and Raitman v. McCune, there was still doubt as to what this court meant, surely it will not be urged that there is room even for modest doubt since the decision in Detroit Graphite Co. v. Carney, supra. In this case a materialman brought suit against the owner and the contractor to recover judgment and enforce a lien. Before suit was brought the owner complied with the provisions of section 10980, supra, by making the necessary cash deposit and posting the necessary bond. On trial of the case judgment was rendered in favor of the owner and the contractor. It was contended by the owner and the contractor in the trial court that since they were the successful parties they were entitled to an attorney's fee under section 11021, O. S. 1931, which reads:

"In an action brought to enforce any lien the party for whom judgment is rendered shall be entitled to recover a reasonable attorney's fee, to be fixed by the court, which shall be taxed as costs in the action."

They further urged that sections 11021 and 10980 should be construed together and harmonized, and that when so construed the owner and the contractor, when successful in defending against a lien claim, are entitled to an attorney's fee, even though section 10980 is silent as to their right in that respect. On the other hand, the lien claimant urged that the provisions of section 10980 with reference to attorney's fee are exclusive, and that only the lien claimant can recover an attorney's fee in an action commenced after a lien on property has been discharged by a cash deposit and bond. The trial court denied an attorney's fee to the owner and the contractor, but this court held that they were entitled to it, saying:

"We conclude from a consideration of the two sections of the statute under discussion that they should be construed together, and that the provisions of section 10980 are supplementary to the provisions of section 11021. Under this construction, either of the parties to the litigation contemplated by section 10980, supra, may, if entirely successful, recover an attorney's fee. We are impelled to adopt this conclusion not only by the language and terms of the statute and the purpose to be accomplished thereby, but also upon consideration of the possibility that the construction urged by the plaintiff and adopted by the trial court might render the provisions of section 10980, with reference to attorney's fee, unconstitutional. At least, grave doubts would arise as to the constitutionality of the section under that suggested construction, as it would make it possible for one party, if successful, to recover an attorney's fee while denying the same relief to the other party in the event of his success. See Chicago, R. I. & P. R. Co. v. Mashore, 21 Okla. 275, 96 P. 630, 17 Ann. Cas. 277, and Oligschlager v. Stephenson, 24 Okla. 760, 104 P. 345. It is the duty of a court in construing a statute to adopt a construction which will avoid grave doubts or uncertainty as to its constitutionality, if such a construction is fairly possible. See Crowell v. Benson, 285 U. S. 22, 52 S. Ct. 285, 76 L. Ed. 598.

"We therefore hold that in an action to enforce a lien upon money deposited by virtue of section 10980, O. S. 1931, either party may, if entirely successful, be allowed an attorney's fee. It follows that the trial court erred in denying this relief to the successful defendants in this case."

The second paragraph of the syllabus reads:

"In an action to enforce a materialman's lien commenced after the lien has been discharged by making the cash deposit and posting the bond contemplated by section 10980, O. S. 1931, the successful party to the controversy, whether the lien claimant, owner or contractor, should, if entirely successful, be allowed a reasonable attorney's fee."

We think all the arguments of plaintiffs in error for attorneys' fees, court costs and interest are fully answered by this decision. To hold now that claimants in the present case can recover judgment for attorneys' fees, costs and interest, under section 11021, supra, or other sections of the statutes, would be to hold that one of the parties to the litigation contemplated by section 10980 may, **although not entirely successful,** recover an attorney's fee and costs, and thus nullify completely the holding in Detroit Graphite Co. v. Carney. By extending the statute to take in the owner and the contractor, against whom there is no restriction in the statute, and then limiting their recovery to cases where they are entirely suc-

cessful, we necessarily limited to the same extent the lien claimant against whom the restriction is expressly made. Without consulting the lexicon or scrutinizing judicial definitions, we say without hesitation that the party who is entirely successful in a lien action is the party who gets judgment for the full amount of his claim as filed. To extend the statute to cover the owner and the contractor in any other manner or under any other conditions than it is construed to cover the lien claimant, would, as we suggested in the Detroit Graphite Co. Case, raise grave doubts as to its constitutionality. What doth it profit to save the constitutionality of the statute by enlarging the rights of one party and lose it by restricting the obligations of another? We would call it a novel exercise in the harmonization of statutes for us to extend the application of the statute to cases not designated and withhold its application from cases expressly named.

We cannot make clearer the language used in the second paragraph of the syllabus in Detroit Graphite Co. v. Carney: "The successful party to the controversy, whether the lien claimant, owner or contractor, should, if entirely successful, be allowed a reasonable attorney's fee." We hold, therefore, that the plaintiffs in error, not having recovered against the defendant in error J. L. Seidenbach judgments on their claims in the respective amounts for which such claims were filed, they are not entitled to judgments on the posted bonds or against said defendant in error for attorneys' fees, court costs and interest.

Another question arises in respect to certain of the cash deposits made by the owner. Time was given the various lien claimants to make supersedeas bonds, after the judgment of the trial court was rendered. Some of the appealing lien claimants executed such bonds, while others did not. After the time allowed for making bond had expired, the trial court entered its order directing the clerk to return to the owner the deposits in connection with the lien claims on which no supersedeas bond had been executed. Apparently the order has been complied with. The question arises as to what order this court should make respecting the liens that have been sustained against the cash deposits withdrawn by the owner.

Our attention has not been directed to any authority passing on this question, and our own research has revealed only two decisions that shed any light on the precise issue presented. In Wichita Sash & Door Co. v.

Weil (Kan.) 103 P. 1003, suit was brought to enforce a subcontractor's lien. The owners pleaded as a defense or offset damages resulting from defects and omissions in the work performed and in the materials furnished by the subcontractor. A default judgment was rendered against the owners and the contractor for $405.75, but the judgment was set aside as to the owners. Later the owners tendered into court the sum of $375 and offered to confess judgment for costs up to that time. The plaintiff declined the tender on the ground that it was insufficient in amount, and also urging that it was not a case in which a tender could be made by the owner. On trial a verdict was rendered against the owners for $290.40. After the verdict the owners were permitted to withdraw $84.60 of the deposit, the difference between the amount as originally tendered and the amount found in the verdict. The question of a lien upon the premises then came on for hearing, and the trial court specially found that the necessary steps had been taken by plaintiff to perfect a lien, but refused to enforce it because of the tender and deposit made by the owners. On examination of the verdict the trial court reduced the amount to $279.20. It appears by a supplemental record that after the settling of the original record the trial court permitted the owners to withdraw the balance of the money tendered. It was held by the appellate court that inasmuch as the plaintiff declined the offer and deposit, it was in no position to claim any benefit from the same. The owners, however, insisted that the tender operated to discharge the lien. The court then observed:

"No provision is made by the statute for the release of a mechanic's lien by a tender or deposit of money; but, assuming that the court under its equitable powers may authorize the substitution of a cash deposit for a claimed lien and order the release of the lien, it could only be done where the deposit is received for that purpose and remains in the custody of the court. Here the court has allowed the amount tendered and paid in by appellees to be withdrawn, leaving the appellant without lien or deposit. The action of the court characterizes the proceeding and indicates that the appellees in asking for the money, and the court in allowing it to be withdrawn, did not regard the deposit as a substitute for the lien. The findings, however, show that the appellant was entitled to the lien on the premises of the appellees for the amount found to be due, and to this extent the judgment must be modified."

Cunningham v. Hatch, 18 N. Y. S. 458, in-

volved a statute authorizing the discharge of a mechanic's lien by a deposit with the county clerk. After the lien was filed, the owners made the deposit and discharged the lien. The plaintiff failing to appear when the case was set for trial, the complaint was dismissed, whereupon the owners withdrew the cash deposit. Later the order dismissing the case was set aside, and the owners were ordered to return the deposit to the clerk. From that order an appeal was taken. The appellate court held that the order of dismissal was properly set aside, directing attention particularly to the order which required a return of the deposit. Holding that the interests of justice plainly demanded the restoration of the deposit, the court said:

"By the payment into the office of the county clerk, plaintiff's lien on the property was extinguished; and the papers show that he has no other resource for the satisfaction of his claim except the fund to which his lien was transferred. The withdrawal of the money by the defendants was the consequence of their judgment; and that judgment being vacated, they have no authority to retain the money. On the other hand, the action being reinstated, the plaintiff has a right to the return of the security which he lost only by a default, from all the effects of which he is exonerated.

"The single point urged by appellants against the order is that it 'is unauthorized without a trial and judgment of ownership.' The argument would be valid and convincing if the order required payment to the plaintiff; but since its only effect is to return the deposit into the clerk's office, to abide the event of the litigation, no question of ownership arises, or is determined by the order. Defendants' property in the fund cannot be affected except by a judgment for the plaintiff; and before that is attained they will have ample opportunity to protect their rights. To suffer defendants to retain the money would be to adjudicate the right without a trial. Present discussion of the proper procedure to enforce the order of restitution is premature."

From the reasoning of these two cases, and from our analysis of the statute, we believe that the order in the present case releasing certain of the deposits to the owner was unauthorized. By the judgment of the court the respective liens were established against the deposits, which were substituted for the real estate of the owner. A failure of the lien claimants to give supersedeas bonds would not release liens which the judgment of the trial court established against the owner's realty. Bonds were fixed by the trial court for approximately the amount of the respective claims as filed.

The order of the trial court was that all money deposited be returned to the owner, over and above the amount for which the supersedeas bonds were given. The claim of Patterson Steel Company for $11,327.89 was denied in full by the trial court, but this claimant gave a supersedeas bond. We think that where the lien claim was denied in full, there might be reason for requiring a supersedeas bond in order to hold the deposit intact, but it is not necessary for us to pass on that point. The statute seems clearly to provide that the deposit is to be the substituted security until the claimant's right to a lien is finally determined. We see no reason why the matter of interest on the deposit that might be due the owner on certain contingencies could not be taken care of by an order of court determining the respective equities. In any event, we think it obvious that the withdrawal of the deposits, where liens were established against them by the judgment of the trial court, was premature where the validity and extent of the liens had not been finally determined.

We conclude, therefore, that the proper order is that the defendant in error J. L. Seidenbach be directed to redeposit with the court clerk such sums as were withdrawn by him and are necessary to discharge the liens as established by the judgment of trial court and affirmed by this court, and such is our order. Inasmuch as the withdrawal of the deposits was unauthorized as a matter of law, we think it proper for this court to make further order that, if the deposits are not returned as directed by this court, the liens against such withdrawn deposits be reinstated against the property of defendant in error J. L. Seidenbach, involved in this action, subject to the rights of third parties who have in good faith and for value acquired interests in such property during the time the liens against the same were discharged. This order reinstating the said liens against such property shall not in any way restrict the power of the court below to enforce this court's order requiring a redeposit of the funds withdrawn, if for any reason such order must be enforced to protect the liens of the claimants concerned.

We come next to the separate assignment of the Patterson Steel Company, one of the lien claimants, which was denied a lien in any amount. Pertinent facts are that the Patterson Steel Company contracted with the contractor to furnish reinforcing steel and mesh for the erection of the building for the sum of $7,650, and to furnish pans and ends for con-

crete forms for said building, and to set and remove the same, for the sum of $3,000; that such contract provided for no extras; that the last reinforcing steel and mesh provided for in the contract was furnished December 23, 1926; that the last labor done on removing pans was February 25, 1927; that from the 30th day of October, 1926, to the 25th day of February, 1927, said Patterson Steel Company furnished items consisting of transom rods, flat iron bars, bolts, girt angles, and performed certain labor on the building with a cutter; that those extras were items contemplated by the owner's contract with the contractor, but were not items contemplated by the original contract between Patterson Steel Company and the contractor; that said extra items were furnished on a separate oral contract; that the lien statement of Patterson Steel Company was filed April 13, 1927, claiming a lien for $6,438.13, after a credit of $4,990.76.

The trial court denied a lien of $3,000 for the pans and ends, holding that this material did not become a part of the building and was not therefore a lienable item. Plaintiffs in error rely for reversal of this action of the court on Tway et al. v. Thompson et al., 160 Okla. 279, 16 P. (2d) 76. This case involved the use of lumber and materials furnished in making concrete forms in connection with construction of cement culverts on a state highway. The lumber and materials were entirely used and consumed in the construction of the culverts, and were "rendered valueless thereby and incapable of removal and use in a like structure." This court observed further that "the life and substance of the material had been used up in the erection of the building." In Pickering Lumber Co. v. Fuller, 117 Okla. 53, 244 P. 760, this court held that a materialman could not recover on a road construction bond for material used in constructing concrete forms where the forms were moved from job to job until they were worn out. Purchase price of pipe furnished to contractors for use in pumping sand and water in constructing embankment on railroad right-of-way was held not lienable, since the pipe constituted part of the contractor's equipment. American Tank & Equipment Co. v. T. E. Wiggins, 170 Okla. 504, 42 P. (2d) 115.

In the instant case the pans were not made for the Seidenbach job, nor did they ever become a part of the building, but were removed to be used on other jobs, and were regarded by their owner as equipment or tools belonging to it. The statute relating to liens on leaseholds for oil and gas purposes has been held broad enough to cover use of tools and equipment (Wm. Graham Oil Co. v. Oil Well Supply Co., 128 Okla. 201, 264 P. 591), but sections 10975 and 10977, O. S. 1931 (sections 7461 and 7463, C. O. S. 1921), the general lien statutes, have never been extended by this court to involve equipment, except in cases where the lien was for labor and the tools or equipment became instrumentalities in the performance of the labor. The construction given the words "furnish" and "used" in the Graham Oil & Gas Company Case was not meant to apply to section 7461, C. O. S. 1921 (section 10975, O. S. 1931), but was strictly confined by express language of the decision to section 7464, C. O. S. 1921 (section 10978, O. S. 1931). Clearly they cannot be given the same construction. Under section 10975, supra, the general lien statute, the labor must be performed on the building and the material must be used in the construction of it. That such is not the case under section 10978, supra (the oil and gas well lien statute), is perfectly clear from the language of the section itself.

We hold, therefore, that the trial court was right in denying Patterson Steel Company a lien for the rental of their pans.

The authorities do not seem always to have clearly distinguished as to when extras are supplemental to the original contract, and therefore included within it, and when they constitute a new and separate contract. We believe, however, that the question as to whether the furnishing of extras in this case extended the time within which a lien might be filed for all materials furnished under the original contract is ruled by Joplin Sash & Door Works v. Oklahoma Presbyterian College for Girls et al., 36 Okla. 547, 129 P. 40. The general rule therein announced is that, where material is furnished, all going to the same general purpose, as the building of a house or any of its parts, though such material be ordered at different times, yet if the several parts form an entire whole, or are so connected together as to show that the parties had in contemplation that the whole should form but one, and not distinct matters of settlement, the whole account must be considered as a unit, or as being but a single contract. It has been urged in answer to

this statement of the law that the extras cannot be regarded as being furnished under the original contract between the lien claimant and the contractor, and that therefore the decision declaring this rule is not an authority in point. But an analysis of the opinion and the authorities on which it is based will show that "deliveries, even if made under separate contracts, if the work is continuous, will be considered as one, and the time limit for filing will date from the last item furnished"; and that "where a mechanic furnishes labor and material under different contracts which relate to similar kinds of work, and are in fact additional to the original contract, and are made before the work under that contract is completed, the services are regarded as continuous, and a statement may be filed within the time limited after the entire work is done, though the work under some of the contracts has ceased more than that time before the filing of the statement."

The first item for extras was a small cutting job, October 30, 1926. Other extras were furnished covering the period up to February 25, 1927, the total extras amounting in value to $678.89. All the extras went into the building, and they were all such as were contemplated in the contract for the construction of the building.

Eliminating the pan contract, the original lienable claim of Patterson Steel Company was $8,328.89. There are undisputed credits of $4,890.76, leaving a balance due on the claim of $3,438.13.

Plaintiffs in error have strenuously insisted that the fee allowed the referee was excessive, and that it was prematurely allowed and paid. A fee of $10,000 was allowed, and it was paid to the referee prior to the time he prepared his report and rendered his decision in the case. We think it clear that the allowance and payment of the fee was premature. See Burch v. Harte, 1 Ohio N. P. 477; Robinson v. Ball, 176 N. Y. S. 273. We think, also, that the fee allowed was excessive. While trial courts have a wide discretion in the allowance of referees' fees, this court has the power to review their judgments and determine whether the fees are reasonable, even where the allowance is not challenged. Lynde v. Lynde, 64 N. J. Eq. 736, 52 Atl. 694, 58 L. R. A. 471; In re Badger, 9 F. (2d) 560; Newton v. Consolidated Gas Co. of N. Y., 259 U. S. 101.

In view of the peculiar circumstances of this case, it is our order that this case be remanded to the trial court for a full hearing on the reasonableness of the fee to be allowed the referee, with directions to the trial court to give notice to all parties interested of such hearing, and then determine, after such hearing, what is a reasonable fee for the services rendered by the referee. We are adopting this procedure because at the time the application was made for allowance and payment of this fee, the parties were all placed in the embarrassing situation of opposing the allowance made to the referee, whatever the amount might be, at a time when the referee had not arrived at his findings of fact and conclusions of law and made his report. We think it clearly against public policy to place litigants and their attorneys in such a situation. A hearing on the reasonableness of the fee to be allowed, now that the other issues have been determined, will give all parties an opportunity to make a record on which an equitable judgment may be rendered.

The contract price of the building was $128,646. From this amount should be deducted $26,625, damages for delay; $55,259.69, the cost of completing the building; $19,445.57, the amount paid by the owner for labor, and $978.52, labor claims paid by the owner, or a total of $102,308.78. This leaves available for the payment of lien claims the sum of $26,335.22.

The original lienable amount of the respective claims is shown by the following:

| Name of Lien Claimant | Original Lienable Amount |
|---|---|
| Superior Weather | $ 100.00 |
| Southern Cornice | 581.00 |
| Standard Roofing | 840.00 |
| Pittsburg Glass | 960.52 |
| Campbell Metal Works | 3,000.00 |
| Consolidated Cut Stone | 12,269.28 |
| United Clay Products | 3,602.03 |
| J. B. Klein | 10,621.84 |
| Pickering Lumber Company | 490.50 |
| Builders Supply Company | 5,042.62 |
| Monohon Plaster Company | 4,156.45 |
| Mary Warner | 4,381.00 |
| Patterson Steel Company | 8,327.89 |

To the foregoing sums should be added the sum of $2,765.95, the amount paid by the owner on unfiled claims. The aggregate total is $57,139.08, which represents the amount of all lienable claims, except the preferred labor claims. The amount available for payment of lien claims being $26,335.22, the percentage of the owner's liability, without considering the extent to which the same has been

discharged by payments to the contractor, will be determined by the relation of $57,-139.08 to $26,335.22, which, expressed in terms of percentage, is 46.0896 plus per cent. of the original lienable amount above set forth, less payments made, as shown by the following:

| | |
|---|---|
| Pittsburg Glass | $ 99.89 |
| J. B. Klein | 108.61 |
| Builders Supply | 2,050.04 |
| Monohon Plaster | 206.45 |
| Mary Warner | 2,500.00 |
| Patterson Steel Company | 4,890.75 |
| Payments made on unfiled lien claims | 2,765.95 |

Said sums will be deducted from each of the respective items indicated as computed on the percentage basis above stated. The result will be the amount due from the owner to each of the respective lien claimants as of September 15, 1927.

Where the payments exceed the percentage allowance, such claims will be eliminated and share no further in the distribution. The trial court will also eliminate such lien claimants as have accepted the judgment of the trial court and have not appealed therefrom.

The costs will be apportioned among the lien claimants upon which some recovery is allowed against the owner or his property in proportion to the respective amounts they recovered. The costs thus apportioned and taxed may be deducted from the fund available for the payment of lien claimants. Each of the apportioned cost charges will, to the extent it has been paid out of the cash deposit in connection with the lien to which it is attached, be treated as a satisfied portion of the judgment.

The judgment of the trial court is therefore modified to the extent herein expressed, and this cause is remanded to the trial court, with directions to determine the allowance to be made for referee's fees, after a hearing as herein directed, and then render judgment upon the evidence heretofore taken, in accord with the views expressed in this opinion.

RILEY, WELCH, and CORN, JJ., concur. BAYLESS, V. C. J., dissents. OSBORN, C. J., GIBSON, and DAVISON, JJ., and ROWE, Special J., concur in part and dissent in part. PHELPS and HURST, JJ., disqualified.

OSBORN, C. J. (concurring in part and dissenting in part). I dissent from paragraphs 2 and 7 of the syllabus of the majority opinion. I am of the view that the rule announced in J. B. Klein Iron & Foundry Co. v. Mays, 76 Okla. 177, 184 P. 577, controls and is decisive of the question of the right of the owner, Seidenbach, to offset his claim for damages for delay in completion of the building against the lien claimants for the reason that said rule of law, in my opinion, is erroneous, and under the facts in this case I do not believe that said rule has any application for the reason that the contract provides for damages for delay in the completion of said building and that the contractor "hereby agrees to allow and pay out of any balance that may then remain due and payable to him" certain damages for delay.

I dissent from that portion of the opinion declining a lien to Patterson Steel Company for the rental of certain "pans" used in the construction of said building for the reason that it appears that it contracted to furnish certain materials and furnish the labor in putting the same in place.

Otherwise, I concur in the majority opinion.

GIBSON, J. (concurring in part and dissenting in part). I concur in the majority opinion except that I dissent to that part wherein it holds that the rule announced in J. B. Klein Iron & Foundry Co. v. Mays, 76 Okla. 177, 184 P. 577, controls and is decisive of the question of the right of the owner, Seidenbach, to offset his claim for damages for delay in completion of the building against the amounts claimed by the lien claimants, for the reason that I do not think that the rule has any application to the questions involved here.

I also dissent to that part of the opinion which denies the lien claimants their costs and attorney's fees.

I am authorized to say that Mr. Justice DAVISON concurs in these views.

ROWE, Special Justice (concurring in part and dissenting in part). I concur in the majority opinion except that I dissent to that part of the majority opinion which refuses a lien to the Patterson Steel Company for the "pans" and labor in putting same in place in the construction of said building.